William J. SCOTT, on his own behalf
and on behalf of all persons
similarly situated, Plaintiffs,

v.

CITY OF HAMMOND, INDIANA, et
al., Defendants.

No. 80 C 4563.

United States District Court,
N. D. Illinois, E. D.

Oct. 7, 1981.

Joseph V. Karaganis, Sanford R. Gail, Russell R. Eggert, A. Bruce White, O'Conor, Karaganis & Gail, Chicago, Ill., for plaintiffs.

Dorothy Attermeyer, Environmental Protection Agency, Chicago, Ill. and William L. Want, U. S. Dept. of Justice, Washington, D. C., and Gail C. Ginsberg, Asst. U. S. Atty., Chicago, Ill., for defendants E.P.A. and Douglas M. Costle.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Illinois citizen William J. Scott ("Scott") sues the City of Hammond, Indiana ("Hammond"), the Hammond-Munster Sanitary District ("District") and the United States Environmental Protection Agency and its Administrator (collectively "EPA") because of District's alleged discharge of raw human fecal material into Lake Michigan. Scott seeks relief against Hammond and District under theories of Illinois and federal common law of nuisance, alleging that the discharges caused 1980 closings of several Chicago beaches.[1] Scott also claims EPA has failed to perform certain allegedly non-discretionary duties imposed by Section 303 of the Federal Water Pollution Control Act Amendments of 1972 (the "Act"), 33 U.S.C. § 1313 ("Section 303"), and seeks an injunction requiring EPA to comply with those Section 303 requirements.

1. Scott brings this putative class action "on behalf of all other citizens of Illinois who use Lake Michigan for body contact recreation and as a source of drinking water."

EPA has moved to dismiss the Complaint as it pertains to EPA. For the reasons stated in this memorandum opinion and order EPA's motion is granted.

### Claims Against EPA

1. *Statutory Framework and Nature of the Claims*

Section 303 is one component of the Act's comprehensive scheme to regulate water pollution. It requires states to establish water quality standards ("standards") applicable to the discharge of pollutants into interstate and intrastate waters. In conjunction with that requirement Act § 304 requires EPA to promulgate non-binding water quality criteria ("criteria") that designate the maximum concentration of various pollutants for a waterway that would still "protect" its designated uses.

States may and usually do use the criteria in formulating their standards. Completed standards are submitted to EPA and if approved become "the water quality standard for the applicable waters of that State." If EPA instead determines the submitted standard fails to meet the requirements of the Act it is authorized to promulgate a different standard for the state.

Section 303(d) also requires states to develop total maximum daily loads ("TMDLs") for all dischargers into waterways for which certain requirements of Act §§ 301(b)(1)(A) and (B) are not satisfied. Lake Michigan is such a waterway. TMDLs are in turn allocated among the various dischargers to set specific limits on the amount of pollutants each entity may discharge. Unlike the formulation of standards, for which EPA provides advisory criteria under Section 304, initial promulgation of TMDLs is entirely the responsibility of the states. However proposed TMDLs are subject to EPA approval, and if tendered TMDLs are deficient EPA is required to establish TMDLs within 30 days.

Scott alleges that Hammond and District have illegally discharged raw human fecal material into Lake Michigan. In 1977 both Indiana and Illinois submitted and obtained EPA approval of proposed standards for the discharge of fecal coliform into Lake Michigan. However neither state has submitted any TMDLs for approval even though Section 303(d)(2) required such submissions by December 28, 1978.

Scott claims that under the Act EPA is required to adopt:

(1) criteria applicable to fecal tract virus and pathogen bacteria discharges into Lake Michigan, and

(2) TMDLs for all such discharges.

Claiming jurisdiction is proper under 28 U.S.C. §§ 1331, 1332 and 1361 and 33 U.S.C. § 1365 (citizen suits under the Act), he urges the Act imposes a non-discretionary duty on EPA to promulgate the requested criteria and TMDLs because (1) Section 303(c)(2) mandates that state standards "shall be such as to protect the public health" and (2) present standards violate that mandate because they inadequately regulate the discharge of bacteria and viruses.

2. *Promulgation of Bacteria and Virus Criteria*

Scott's responsive memorandum levels a barrage of charges as to EPA's non-promulgation of such criteria. Those charges however essentially reduce to one: Standards adopted in 1977 by Indiana and Illinois applicable to fecal material discharges into Lake Michigan are inadequate because they do not specifically regulate two alleged components of fecal pollution.

■ Our Court of Appeals' decision in *United States Steel Corp. v. Train*, 556 F.2d 822 (7th Cir. 1977) defines the avenues for relief open to Scott. If his Complaint is read as contesting the substance of the standards he may bring only an action (1) *against the State[s]* in state court or (2) "a federal action against the state officers responsible for their [the standards'] enforcement alleging deprivation of a federal constitutional right." 556 F.2d at 836–37. Obviously Scott has selected neither of those courses of action here. Under *United States Steel* his only other available course would have been to seek Administrative

Procedure Act review of EPA's approval of the standards. 556 F.2d at 837. But as was the case in *United States Steel*, Scott's Complaint does not seek that relief and cannot be sustained on that ground either.

In short *United States Steel* holds that where a state and EPA have addressed a pollution problem by respectively issuing and approving standards, challenges to those standards must be directed at the state, *id*:

> As we have seen, the standards are state, not federal regulations.... While these state regulations, like any other state regulation or statute, can be challenged on federal constitutional grounds against the appropriate state officials ... this was not such an action.

█ Scott's efforts to characterize his request for promulgation of virus and bacteria criteria in various ways (other than as a challenge to the sufficiency of the 1977 standards) is unpersuasive. He does not attempt to refute EPA's claim that the 1977 standards were designed to regulate fecal pollution discharges and thus could have embodied the specific criteria Scott seeks. Thus EPA and the states have acted under Section 303 to establish standards pertaining to a type of pollutant discharge (fecal). Different labels do not change the essence of Scott's attack on the substance of those standards. *United States Steel* and the EPA procedure for review of agency actions would effectively be eviscerated if a party were allowed to launch such attacks via a federal action against EPA. Scott has therefore failed to state a cause of action against EPA for its non-promulgation of fecal bacteria and virus criteria.

### 3. *Promulgation of TMDLs*

█ Section 303(d)(1)(A) requires each state to develop TMDLs for those waters within its boundaries where water quality standards will not be achieved by application of technology-based limitations. Under Section 303(d)(2) EPA's duty is to

either approve or disapprove such [proposed TMDLs] ... not later than thirty days after the date of submission ... [and if disapproved] establish [TMDLs] as ... [it] determines necessary to implement the [applicable] water quality standards....

Scott's Complaint seeks to have EPA "adopt a ... [TMDL] for all discharges of viruses and bacteria into Lake Michigan which will ensure the attainment of the water quality criteria for viruses and bacteria." However neither Indiana nor Illinois has submitted a proposed TMDL, and Section 303(d)(2) limits EPA's authority in this area to (1) approval of *state-submitted* TMDLs or (2) promulgation *after* disapproval of such submission. Scott has submitted no authority for the proposition that EPA may promulgate TMDLs in the absence of a state proposal, or for the proposition that EPA can in some respect enforce a state's duty to submit TMDLs.[2]

This Court need not decide whether Scott may sue a *state* for its failure to submit TMDLs, for he has not sought to do so. Clearly the Act provides no basis for a suit against EPA for its "failure" to promulgate TMDLε in the absence of such a submission.

### Conclusion

EPA's motion to dismiss the Complaint is granted as it pertains to EPA.

---

**2.** It is noteworthy that Section 309 of the Act, entitled "Enforcement," authorizes the EPA to bring suit against any person in violation of various sections of the Act, but *not* Section 303—the provision from which the State's obligation to submit TMDLs emanates.